# IN THE COURT OF APPEALS OF IOWA

No. 17-1855
Filed January 24, 2018

**IN THE INTEREST OF E.G.,**
**Minor Child,**

**M.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D.

Fagan, District Associate Judge.

The mother appeals from the modification of a dispositional order

transferring placement of her child to an out-of-state relative. **AFFIRMED.**

Amanda J. Heims, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Roberta J. Megel of the State Public Defender Office, Council Bluffs,

guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

The mother appeals from the modification of a dispositional order transferring placement of her child, E.G., to an out-of-state relative.[1]  The mother claims the juvenile court erred in several respects; she maintains (1) the court did not have the authority to order the change in placement at the hearing, (2) there was a lack of notice regarding the possible change, (3) there was not a substantial change in circumstances warranting a change in E.G.'s placement, and (4) the change in placement is not in E.G.'s best interests because it is hindering the reunification of the mother and E.G.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) became involved with this family in May 2017, upon allegations the mother was using methamphetamine while caring for E.G. (who was then ten years old).  E.G. was immediately removed from the mother's care pursuant to an emergency removal order, with a removal hearing taking place a few days later.

At the hearing, through counsel, the mother requested that E.G. be placed with her maternal grandparents if she was not immediately returned to the mother's care.  The court noted that the grandparents lived in Nebraska and thus were not a placement option without the completion of a home study.  E.G. was placed in the care of her adult sister subject to DHS supervision.  The sister lives in a small Iowa town approximately fifteen miles from Council Bluffs, where the mother resides.

---

[1] E.G.'s father is deceased.

Following a July hearing, E.G. was adjudicated a child in need of assistance (CINA). The dispositional order placed E.G. with her sister and her sister's family.

Although E.G.'s sister was meeting her needs, it was noted in an August report that E.G. was having a difficult time transitioning at her sister's home and "that it is difficult for [the sister] and her husband to continuously spend time with [E.G.] due to their family dynamics involving their child and expected baby." According to E.G.'s therapist, it was "evident [the sister] desires to have a healthy older sister relationship with [E.G.] but is not able to provide long-term parental caregiving." E.G. was spending much of her time at the home of her uncle and maternal grandparents in Omaha (the same home in which the mother had originally asked E.G. be placed), where she was able to spend her summer days playing with cousins who lived nearby.

An Interstate Compact on the Placement of Children (ICPC) was ordered to be completed on the uncle's home,[2] and the family informed DHS they believed it would be in E.G.'s best interests to be placed in the care of the uncle once it was completed. E.G. was enrolled in school in Omaha near the home of her uncle and maternal grandparents.

In late September, DHS requested the court continue the "CINA Review Modification Hearing" because the ICPC was pending and DHS wanted additional time to receive and review the report. No resistance was filed, and the court granted the request and re-scheduled the joint hearing for November 2.

---

[2] According to the ICPC, the uncle had moved in with the grandparents in 2016 after the death of one their children—the uncle's sibling—because "they took [it] hard" and, due to health problems, "they both need a little extra care."

At the hearing, DHS informed the court it had received a verbal report that the ICPC had been completed and the uncle's home was going to be approved. The department asked the court to order E.G. be placed with the uncle once the written report was received. The mother asked the caseworker whether she believed the distance between the uncle's home and the mother's home—approximately forty minutes of drive time—was a hindrance to reunification; the caseworker noted it would actually be less time in a vehicle for E.G. as she was already enrolled and attending school in Omaha and a change in placement would mean she was near her school—where she goes five days a week—and would only need to be in the car for an extended period for visits once a week—as they were then scheduled. The caseworker testified DHS would continue to facilitate visits between E.G. and the mother in Council Bluffs.

The mother did not present any evidence at the hearing, but, through counsel, she changed her original request that E.G. be placed with the maternal grandparents, stating, "We do believe that if [E.G.] is placed with her uncle, that is going to prohibit reunification between [E.G.] and [the mother] due in large part to the distance between the two of them. So we would ask the Court not to place [E.G.] with her uncle at this time . . . ."

In its written ruling, the court ordered "[t]hat upon receipt of an approved home study, the care, custody, and control of the minor child, [E.G.], be placed with [the] maternal uncle," subject to the supervision of DHS.

The mother appeals.

**II. Standard of Review.**

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). Our primary concern is the child's best interests. *Id.*

**III. Discussion.**

As noted above, the mother raises a number of issues with the juvenile court's ruling modifying the placement of E.G. As to her first two complaints—that the court does not have the authority to change a placement at a review hearing and there was a lack of notice regarding the possible change—the State maintains the issues have not been preserved for our review, as the mother failed to raise any such objections before the district court. After reviewing the record, we agree with the State.[3] *See Garwick v. Iowa Dep't of Trans.*, 611 N.W.2d 286, 288 (Iowa 2000) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." (citation omitted)).

Next, we consider the mother's argument there was not a material and substantial change in circumstances warranting a change in E.G.'s placement.[4]

---

[3] We note that the scheduled hearing was not only a review hearing, but also a modification hearing. *See* Iowa Code § 232.103 (2017) (allowing the court to modify a dispositional order following a modification hearing on its own motion or the motion of a party). Additionally, the mother had notice—based on court filings—in August that the court had ordered the ICPC, and DHS's September motion to continue referenced the fact that the department was making the request for a continuance in order to have time to receive and review the completed ICPC.

[4] The State maintains such a finding is no longer necessary and cites to some of our recent unpublished case law on the issue. *See, e.g.*, *In re A.J.*, No. 16-1954, 2017 WL 1278366, at *3 (Iowa Ct. App. Apr. 5, 2017); *In re M.M.*, No. 16-0548, 2016 WL 4036246, at *3–4 (Iowa Ct. App. July 27, 2016) (noting supreme court case law provides that "modification of custody or placement requires a material and substantial change in circumstances," but concluding later amendment of the statute by the legislature which does not include a requirement that a change of circumstances be proved "is controlling" and no such finding need be made). However, in other instances, our court has continued to require that such a finding be made. *See In re C.C.*, No. 16-1678, 2017 WL 104969, at *1 (Iowa Ct. App. Jan. 11, 2017) (noting "our precedent requires a showing of a 'material and substantial

*See In re D.G.*, 704 N.W.2d 454, 458 (Iowa Ct. App. 2005) ("Before a dispositional order in a juvenile proceeding can be modified, the party seeking modification must first prove a substantial change in material circumstances, and that under the new conditions, a change in is the best interests of the child."). We find such a change had taken place. While E.G. had some difficulty making the transition to her sister's home, she was doing fairly well as she was able to spend time with her cousins and grandparents. The sister was expecting another child and expressed concerns about continuing to act as a maternal figure in E.G.'s life. This development constituted a material and substantial change in circumstances.[5] The approval of the home study of the uncle and maternal grandparents' home provided the court with a placement option that allowed E.G. to remain with family, as the mother had originally requested.

Finally, the mother argues that modifying E.G.'s placement was not in E.G.'s best interests because it hindered her reunification with the mother. It is not clear to us how the move would affect the relationship; according to the caseworker, DHS still intended to facilitate E.G.'s visits with the mother in Council Bluffs, where the mother resided.[6] Moreover, at the time of the review/modification hearing, the

---

change in circumstances.'" (citation omitted)); *In re V.B.*, No. 14-0315, 2014 WL 2600318, at *4 n.3 (Iowa Ct. App. June 11, 2014) ("To impose the additional requirement of showing a substantial change of circumstances, where our legislature has made provisions for permanency and created a two step process to modify a dispositional order to remove a child from a parent's care and transfer custody to DHS, is overly burdensome. However, because our supreme court has approved the principle, we defer to the supreme court whether case precedent should still be followed."). We recognize the split in our decisions but need not reach the issue since we find there was a change of circumstances here.

[5] The mother does not argue that the modification of placement did not satisfy the statutory requirements of Iowa Code section 232.103(4).

[6] In the mother's appellate brief, she maintains "[t]he distance between [the mother] and [E.G.] has caused issues with [the mother] setting up visits with [E.G.], as [the uncle] has transferred all of [E.G.'s] services to the State of Nebraska." There was no indication of

mother had only attended one visitation session with E.G since the case began in May—approximately six months earlier. The mother had attended a few therapy sessions with E.G., but the joint sessions were put on hold after the mother had an unsupervised visit with E.G. and was recorded yelling at her. In contrast, E.G. was reportedly doing well in her new school in Omaha, which was close to the uncle's home. She had better grades than she had achieved the year before and was making a number of new friends. She was also enjoying spending time swimming and playing with her cousins who lived nearby. According to statements he made during the completion of the home study, the uncle was committed to caring for E.G. as long as needed.

Because there was a material and substantial change in circumstances and modifying placement was in E.G.'s best interests, we affirm.

**AFFIRMED.**

---

such in the record properly before us, and we are not at liberty to consider anything outside of the record.